The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Glenn and upon the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 **************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to this case.
3. Cigna Insurance Company was the workers' compensation carrier on risk at all times relevant to this case.
4. On 16 August 1993, the date of the alleged injury to plaintiff's neck, she was employed by defendant-employer as a production worker.
5. Plaintiff's average weekly wage was $331.30 per week, yielding a compensation rate of $220.88 per week.
6. Plaintiff has claimed and defendants have accepted a claim for carpal tunnel syndrome. Plaintiff received workers' compensation benefits for this claim from 18 August 1993 to 1 November 1994. She has not returned to work, and for purposes of this matter, her claim for disability benefits is from 1 November 1994 and continuing.
7. On 24 November 1997, by agreement of the parties, a set of stipulated exhibits and exhibits that were introduced into evidence at the hearing was provided to the Commission as part of the record.
8. The issues to be determined are:
 a. Did plaintiff sustain an injury by accident or contract an occupational disease in the course and scope of her employment; and
 b. If so, what benefits, if any, is she entitled to receive?
 **************
Based upon all of the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Glenn, plaintiff was a thirty-two year old divorced woman with two minor children.
2. Prior to 16 August 1993, plaintiff worked for defendant-employer as a Production Tech worker. She was temporarily moved into another position because a fellow employee was sick and out of work. In the temporary position, plaintiff was required to lift and carry laminations that weighed from 25 to 30 pounds. In her regular position, plaintiff did not have to lift material that weighed as much.
3. On 16 August 1993 plaintiff felt a pull in her neck as she was lifting heavy laminations onto a carousel. Plaintiff continued to work because she thought that the pain would subside and did not immediately report the incident.
4. Plaintiff continued to work for the next several weeks, but when her condition worsened, plaintiff reported pain in her neck, right hand and right arm to her supervisor and the plant nurse. The initial Form 19 completed by defendants indicated that plaintiff complained only about her right hand and arm. When plaintiff received a copy of the Form 19, she had the nurse correct the omission by completing another Form 19 regarding plaintiff's neck pain.
5. Defendants initially sent plaintiff to see Dr. Robert Fletcher for her hand and arm pain. Plaintiff also informed Dr. Fletcher of her neck pain during her first visit on 1 September 1993, but he did not note the neck pain until her next visit on 8 September 1993.
6. When plaintiff failed to respond to Dr. Fletcher's treatment, he referred her to Dr. Inad Atassi, a neurosurgeon. The history recorded by Dr. Atassi shows that plaintiff began having stiffness in her neck in August 1993 while working for defendant-employer, and that her symptoms had increased over the past couple of months despite conservative treatment. Dr. Atassi initially thought that plaintiff's neck, arm and hand pain were the result of a cervical disc injury. After an MRI showed that she had a mild central disc protrusion, he determined that the disc injury caused the neck pain and that carpal tunnel syndrome caused the arm and hand pain.
7. Dr. Atassi discussed with plaintiff treatment options that included surgery and conservative management, but she felt that she would rather live with her symptoms and return to Dr. Atassi as needed. Plaintiff informed Dr. Atassi that she was content with her job and would like to continue it.
8. In August, 1994, plaintiff's neck pain radiated down her arm and she then went to see her family doctor, Dr. John F. Blue, Jr. On physical examination, Dr. Blue found tenderness in her neck. He had another MRI done, which showed a central disc protrusion at two levels in her neck. Dr. Blue treated her pain for several months, during which time she had surgery for carpal tunnel syndrome. When the neck pain continued, he referred her to Dr. Michael C. Parê, a neurosurgeon, and Dr. Gwenesta B. Melton, a rheumatologist, for evaluation. Dr. Blue completed disability insurance forms in which he attributed plaintiff's condition to her employment. He testified that her neck pain could have been caused by the lifting that she had done at work and he stated that he was unaware of any other possible origin of the pain. In his opinion, plaintiff has been unable to work since he began treating her neck pain in August 1994.
9. In his initial evaluation, Dr. Parê noted that plaintiff's neck pain began while working for defendant-employer. He diagnosed plaintiff as having chronic neck and right arm pain. He believed that plaintiff was motivated to get better, and thought she would benefit from physical therapy so he referred plaintiff to Pain Management for evaluation and interaction.
10. Dr. Melton's notes also associate plaintiff's pain with an on-the-job injury. When Dr. Melton examined plaintiff, she found trigger points in plaintiff's neck, upper back, and thoracic spine area. Dr. Melton diagnosed myofascial pain that was exacerbated by plaintiff's repetitive work-load. Dr. Melton concurred with a pain clinic approach for plaintiff's ongoing treatment.
11. At the Pain Management Center of Cape Fear Valley Medical Center, plaintiff was seen by Dr. Jessie Leak for an initial pain assessment, by Dr. Emory Sadler for an initial psychological evaluation, and by Raymond Metzger for a physical therapy evaluation. The histories taken by all three of these health care providers indicate that plaintiff's neck pain began while she was working in August 1993. Dr. Leak stated that he could not rule out some type of cervical radicular component. Dr. Sadler diagnosed a chronic pain disorder associated with both psychological factors and a general medical condition. In his physical examination, Mr. Metzger found trigger points and pain points on the right side of plaintiff's neck.
12. Plaintiff was also examined by Dr. Richard L. Young in connection with an insurance disability application. In his assessment, Dr. Young reported that plaintiff has chronic neck, right shoulder and right upper extremity pain. He did not have MRI reports, so he could not exclude pathology as the cause of her pain, which he stated could well be secondary to disc pathology.
13. Plaintiff had experienced psychological and emotional problems prior to her work related injury on 16 August 1993. However prior to that date, these problems had not resulted in plaintiff being incapable of performing her duties for defendant-employer. On 26 May 1994, she sought treatment from Dr. Blue's physician's assistant, who diagnosed a depressive disorder, prescribed Xanax, and advised her to seek psychological counselling.
14. Plaintiff was referred to Carolina Psychological Associates, where she saw Sandra Windham, M.A., a masters-level psychologist, on 7 June 1994. Through the time of her deposition, Ms. Windham provided therapy for plaintiff weekly and thereafter once to twice a month. Ms. Windham diagnosed plaintiff as having post-traumatic stress disorder (PTSD) and dysthymic disorder. The dysthymic disorder interfered with plaintiff's energy level and was associated with fatigue and chronically low self-esteem. In Ms. Windham's opinion, plaintiff was coping with these conditions fairly well before her work related injury because she was working, taking care of her children and feeling relatively competent. In Ms. Windham's opinion, plaintiff would not have required an evaluation in June 1994 if the injury had not taken place. Plaintiff's injury intensified her PTSD and added to her psychological distress and depressive symptoms to the point where these conditions became disabling, preventing her from performing a job that has an emphasis on speed, accuracy, and production.
15. After several months of therapy, Ms. Windham opined that plaintiff's depression and anxiety symptoms were severe enough to warrant a medication evaluation. Ms. Windham referred plaintiff to Dr. Cecile Bregman, a psychiatrist. Dr. Bregman first saw plaintiff on 21 November 1994 and diagnosed major depression and PTSD. Dr. Bregman prescribed an anti-depressant and recommended continued therapy with Ms. Windham. Dr. Bregman's initial evaluation noted that plaintiff had neck pain secondary to her job. In records from subsequent sessions, Dr. Bregman notes that plaintiff had continuing pain and that she continued to be dysphoric because of her physical problems.
16. Defendants' referred plaintiff to Dr. Bob Rollins, a forensic psychiatrist, for psychiatric evaluation to determine the relationship between the work injury and plaintiff's psychiatric disorder. Dr. Rollins reviewed plaintiff's medical records, administered the MMPI, performed a mental status examination and conducted a clinical interview. Dr. Rollins opined that plaintiff's physical and psychiatric problems can be diagnosed as depression, PTSD, partner relational problems and chronic pain syndrome. Dr. Rollins was uncertain whether plaintiff sustained a workplace injury, but he stated that in reviewing her treatment history, plaintiff related her problems to a workplace injury and that at least three different examining physicians considered her symptoms to be the result of overuse or repetitive workload. Dr. Rollins testified that a painful injury can aggravate or exacerbate psychological symptoms, although in plaintiff's case he disagreed with Dr. Melton's opinion that plaintiff's chronic pain was made worse by her work.
17. The Full Commission accepts the testimony of plaintiff regarding the circumstances of her work related injury and continued pain as credible. Further, the Full Commission gives greater weight to the opinions of Dr. Bregman, Dr. Melton and Ms. Windham that plaintiff's emotional condition was aggravated by her physical condition than to the opinions expressed by Dr. Rollins.
18. Plaintiff sustained an injury by accident in the course and scope of her employment on 16 August 1993, as a direct result of a specific traumatic incident of the work assigned to her. This resulted in an injury to her neck.
19. Plaintiff has a chronic pain disorder as a natural and unavoidable consequence of her neck injury.
20. Before 16 August 1993, plaintiff had PTSD and depression, but these conditions were not disabling.
21. As a natural and unavoidable consequence of the pain from the neck injury, plaintiff's pre-existing PTSD and depression were aggravated and exacerbated.
22. Since August 1994, as a result of the work-related injury to plaintiff's neck, the chronic pain from that injury, and the aggravation and exacerbation of her PTSD and depression, plaintiff has been unable to work and earn the wages in her former position with defendant-employer or in any other employment.
 **************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 August 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned to her, which injured her neck. G.S. § 97-2(6).
2. The aggravation and exacerbation of plaintiff's PTSD and depression, which was a natural and unavoidable consequence of her compensable injury, is also compensable. Morrison v. BurlingtonIndustries, 304 N.C. 1, 282 S.E.2d 458 (1981).
3. As the result of her 16 August 1993 injury by accident and the aggravation thereby of her PTSD and depression, plaintiff is entitled to be paid by defendant temporary total disability compensation benefits at the rate of $220.88 per week commencing 1 November 1994, and continuing until plaintiff returns to work or until further order of the Industrial Commission. G.S. § 97-2(9); G.S. § 97-29.
4. As the result of her 16 August 1993 injury by accident and the aggravation thereby of her PTSD and depression, plaintiff is entitled to have defendants provide all medical treatment to the extent said treatment tends to effect a cure, give relief, or lessen her disability. G.S. § 97-25.
 **************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $220.88 per week from 1 November 1994 and continuing until she returns to work or until further order of the Industrial Commission. That portion of the compensation that has accrued shall be paid in a lump sum, subject to an attorney's fee hereinafter approved. Interest on such lump sum at the rate of 8% per year shall be calculated from 28 March 1996 until paid and shall be paid to plaintiff along with the lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this compensable injury.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits, and thereafter, defendants shall forward every fourth check of compensation to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER